UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FRANKIE D. ADAMS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 12-cv-12394-IT |
| | * | |
| EASTERN FISHERIES, INC., et al., | * | |
| | * | |
| Defendants. | * | |

ORDER

May 20, 2015

TALWANI, D.J.

I.   Introduction

This case involves allegations by Plaintiff Frankie D. Adams ("Adams") that Defendants discriminated against him on the basis of a medical disability by failing to hire him as a boat captain during the 2010 scallop-fishing season. After Defendants' alleged discriminatory failure to hire, Adams began to work with another scallop-fishing fleet. On July 3, 2010, during the course of that employment, Adams slipped and fell between a vessel and the boat dock. Adams suffered injuries from this fall.

Now before the court is Defendants' Motion *In Limine* to Preclude Plaintiff's Damages Evidence After Plaintiff's Subsequent Unrelated Injury [#84]. In this motion, Defendants argue that Adams cannot receive back or front pay for any time after July 3, 2010—the date on which he allegedly became unable to perform the essential duties of a scallop fisherman, with or without reasonable accommodation.

The court finds that the availability of damages depends on whether Defendants' allegedly discriminatory act resulted in Adams performing work more likely to result in an injury

of the sort he suffered on July 3, 2010, than the work he would have been engaged in if employed by Defendants. Thus, there are factual issues appropriate for jury resolution regarding whether Adams' alleged inability to work after July 3, 2010, may be considered in calculating back pay and determining the appropriateness of a front-pay award. Accordingly, Defendants' motion *in limine* is DENIED.

II.     Discussion

Federal courts to have considered the issue have generally held that an employer is not liable for back pay during time periods in which a plaintiff is unable to perform the essential duties of a job due to a disability unrelated to the employer's conduct.[1] See, e.g., Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 145 (2d Cir. 1993) (excluding periods of total disability from calculation of back pay under the ADA); see also Rivera v. NIBC, Inc., 384 N.3d 822, 832-33 (9th Cir. 2004) (same, for Title VII claim); Martin v. Dep't of Air Force, 184 F.3d 1366, 1370 (Fed. Cir. 1999) (same, for Back Pay Act claim); Lathem v. Dep't of Children & Youth Servs.,

---

[1] Adams' claims are brought under Massachusetts law. See Mass. Gen. Laws ch. 151B. Accordingly, decisions interpreting federal law are not binding. See, e.g., Labonte v. Hutchins & Wheeler, 678 N.E.2d 853, 856 n.5 (Mass. 1997). Nonetheless, the First Circuit has recognized "that Chapter 151B 'tracks the ADA in virtually all respects.'" See Tobin, 553 F.3d at 125 n.3 (quoting Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 20 n.5 (1st Cir. 2002))). In resolving the question of whether a plaintiff's inability to work could be attributed to his former employer, such that he was eligible for back and front pay despite his inability to mitigate damages, the First Circuit has also treated federal and state law as analogous. See id. Moreover, the Massachusetts Supreme Judicial Court has required exclusion of back pay accruing during periods in which a plaintiff could not work for reasons unrelated to the employer's discriminatory act. See Black v. Sch. Comm. of Malden, 310 N.E.2d 330, 341-42 (Mass. 1974) (requiring, on remand, that the court deduct back pay "for the time the plaintiffs would have been absent from work because of pregnancy-connected disability"). Accordingly, the court finds nothing to suggest that Massachusetts law does not follow its federal counterpart in this regard.

2

172 F.3d 786, 794 (11th Cir. 1999) (same, for Title VII claim); Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1101 (3d Cir. 1995) (same, for ADEA claim).[2]

Generally, courts have reached the same conclusion with regard to the availability of front pay, which "as an alternative to reinstatement, can only be awarded where the plaintiff is capable of working." Hatter v. Fulton, 92 Civ. 6065(WK), 1997 WL 411623, at *6 (S.D.N.Y. July 21, 1997); see also E.E.O.C. v. E.I. Du Pont de Nemours & Co., 480 F.3d 724, 732 (5th Cir. 2007) ("As she was unable to work in the future, Barrios was not eligible to receive 'future wages and benefits.'"); McKenna v. City of Phila., 636 F. Supp. 2d 446, 466 (E.D. Pa. 2009).[3]

An exception to the general rule articulated above applies where an employer's discriminatory act caused the plaintiff's subsequent inability to perform the essential duties of the job. See Tobin, 553 F.3d at 141 & n.30 ("[I]f an employee is unable to work because of a disability 'caused' by the employer, the employee may obtain compensation for the resulting lost pay."); Blockel v. J.C. Penney Co., Inc., 337 F.3d 17, 27 (1st Cir. 2003) (holding that where a plaintiff's disability worsened shortly after her employer required her to work longer than the forty-hours per week suggested by her doctor, "the jury could have found that Blockel's total disability resulted from J.C. Penney's violation of its statutory duties. Given such a finding,

---

[2] The First Circuit has not expressly adopted this rule. See Johnson v. Spencer Press of Me., Inc., 364 F.3d 368, 383 (1st Cir. 2004) (questioning why a plaintiff should not still be eligible for disability or other benefits that would have been owed by the discriminatory employer but for its wrongful act). However, the First Circuit has implicitly recognized that an unrelated disability that leaves a plaintiff unable to mitigate damages may be grounds for barring an award of back and front pay. See Tobin v. Liberty Mut Ins. Co., 553 F.3d 121, 141 & n.30 (1st Cir. 2009); Soto Segarra v. Sea-Land Serv., Inc., 581 F.2d 291, 297 (1978).

[3] Again, the First Circuit has not expressly ruled on this issue, but has suggested that, as to the issue of continued receipt after disability, back and front pay may be treated alike. See Tobin, 553 F.3d at 141 & n.30; Johnson, 364 F.3d at 381.

[under Massachusetts law] Blockel was entitled to the pay she would have received but for J.C. Penney's mistreatment."); see also Lathem, 172 F.3d at 794.

Where, as here, an injury occurs during the course of subsequent employment entered into for the purposes of mitigating damages, however, that injury is not caused directly by the original employer's discriminatory act. In resolving the question of whether Adams' injury may nonetheless be attributed to Defendants, such that Adams' subsequent failure to mitigate damages may not be held against him, a case from the Eastern District of Pennsylvania, Mason v. Ass'n for Independent Growth, 817 F. Supp. 550 (E.D. Pa. 1993), provides helpful guidance.

In Mason, the plaintiff charged her employer with a discriminatory failure to promote her from a position that entailed significant vehicle travel to a largely sedentary office position. Id. at 552-54. The plaintiff was subsequently involved in a car accident that left her unable to work. Id. The court ruled that a jury could permissibly find that the car accident occurred during the course of the plaintiff's employment and that the plaintiff "would not have suffered the disabling injuries had she been promoted" to a job that that required significantly less driving. Id. at 555. The court further held that, if the jury made such findings, no offset of back pay for failure to mitigate would be appropriate because the employer could be said to have caused the plaintiff's injury. Id. at 555-56.

Several Circuit Courts have also recognized the rule applied in Mason. See, e.g., Martin v. Dep't of Air Force, 184 F.3d 1366, 1367-68, 1372 (Fed. Cir. 1999) (quoting Am. Mfg. Co. of Tex., 167 NLRB 520, 522 (1967)) (finding that the plaintiff was entitled to back pay without offset for time period in which he was unable to work after suffering an injury during the course of his employment as a wrecker driver/mechanic—a position he took after being wrongfully terminated from a civilian position in the Air Force); Wells v. N.C. Bd. of Alcoholic Control,

4

714 F.2d 340, 342 (4th Cir. 1983) ("Had [the plaintiff] not been wrongfully denied [a] promotion to relatively light work, it may reasonably be inferred that he would not have suffered an injury to his back or that any back problem would have been less severe. There was testimony indicating that the back injury was a result of strain from lifting, not of any degenerative or chronic disease. [The plaintiff] reasonably ended his employment for reasons beyond his control, reasons which were causally linked to the defendant's wrongful denial of a promotion."); Whatley v. Skaggs Cos., Inc., 707 F.2d 1129, 1130 n.8 (10th Cir. 1983) (affirming district court's finding that an offset of back pay was inappropriate where "[the plaintiff] would not have suffered his disabling back injury had [the defendant] not terminated him as lobby manager. [The defendant's] act of discrimination forced [the plaintiff] from his management position to blue-collar jobs that required strenuous physical labor resulting in jury to his back." (internal quotation marks and citation omitted)).

  This court finds the rule articulated by these courts persuasive in light of the broad remedial purposes of employment discrimination laws. See, e.g., Mass. Gen. Laws ch. 151B, § 9 ("The provisions of this chapter shall be construed liberally for accomplishment of the purposes thereof."); Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975) (recognizing that antidiscrimination statutes serve the purpose of "eradicating discrimination . . . and making persons whole for injuries suffered through past discrimination."). The limitation requiring that the plaintiff's disabling injury be one that is more likely to occur in the course of the plaintiff's subsequent employment, as compared to the job the plaintiff would have been performing but for the employer's discriminatory act, ensures that the plaintiff does not receive a windfall in cases where the subsequent inability to work would have occurred even absent a discriminatory act (e.g., disability caused by a naturally occurring disease or illness). See, e.g., Wells, 714 F.2d at

342 (finding that wrongfully denied promotion would have resulted in less heavy lifting); Whatley, 707 F.2d at 1130 (finding that plaintiff's original position would have required less heavy lifting); Mason, 817 F. Supp. at 555 (finding that wrongfully denied promotion would have led to significantly less driving); Am Mfg. Co. of Tex., 167 NLRB at 522-23 (finding that, where an injury occurred during completion of a job duty unique to a plaintiff's interim employment and that would not have been required in the plaintiff's original position, continued back pay was appropriate).[4] Accordingly, if Adams shows that: (1) his disabling injury occurred during the course of his subsequent employment and (2) that injury was caused by factors unlikely to have been present during the course of his employment with Defendants, he may be eligible for back and front pay accruing after July 3, 2010.

III. Conclusion

For the foregoing reasons, the court DENIES Defendants' Motion *In Limine* to Preclude Plaintiff's Damages Evidence After Plaintiff's Subsequent Unrelated Injury [#84].

IT IS SO ORDERED.

May 20, 2015  /s/ Indira Talwani
United States District Judge

---

[4] The court is not persuaded by Defendants' argument that Conway v. Electro Switch Corp., 523 N.E.2d 255, 257 (Mass. 1988) precludes this result. Defendants correctly note that Massachusetts Supreme Judicial Court stated in Conway that "compensatory damages are those damages which "make[] the aggrieved party whole, including those which are the 'the natural and probable consequences of the illegal conduct." Id. Here, however, there is no question that loss of pay is a natural and probable consequence an employer's discriminatory failure to hire. The issue presented in this case relates to a plaintiff's responsibility to mitigate damages. Conway does not address this issue.