UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FRANKIE D. ADAMS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 12-cv-12394-IT |
| | * | |
| EASTERN FISHERIES, INC., et al., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

December 22, 2015

TALWANI, D.J.

This case, which involved claims of employment discrimination under Mass. Gen. Laws ch. 151B, was tried by a jury. After deliberation, the jury found that Plaintiff Frankie D. Adams was an independent contractor rather than an employee of Defendants, and accordingly, returned a verdict in favor of Defendants. Adams now seeks a new trial pursuant to Fed. R. Civ. P. 59, alleging that the court improperly instructed the jury and erred in excluding certain evidence, and that the jury's verdict was against the weight of the evidence.

Because the court's instructions were incorrect and affected Plaintiff's substantial rights, Plaintiff's Motion for a New Trial [#180] is ALLOWED.

I.      The Common Law Test Under Massachusetts Law

In interpreting Mass. Gen. Laws. ch. 151B, this court must use a common law test to distinguish employees, who are covered by the statute, from independent contractors, who are not. Speen v. Crown Clothing Corp., 102 F.3d 625, 629 (1st Cir. 1996), as amended (Jan. 22, 1997) (citing Comey v. Hill, 438 N.E.2d 811, 814 (Mass. 1982)). Adams assigns error to the court's instruction on "Employee Versus Independent Contractor" on the ground that under the

common law test, "[t]he 'essence' of the distinction between an 'employee' and an 'independent contractor' 'is the right of control,'" and that "'[o]ther considerations and tests are important only as they bear upon the right of control.'" Pl.'s Mem. Supp. Pl.'s Mot. New Trial [#181], at 2 (quoting Case of McDermott, 186 N.E.2d 231, 232 (Mass. 1933)).

The court's instruction was guided by the First Circuit's opinion in Speen, 102 F.3d 625. There, the First Circuit found that Massachusetts cases subsequent to Case of McDermott make clear that "while directed towards the question of right of control, [the test used in Massachusetts law] involves the assessment of multiple factors." Id. at 630 (emphasis added). After surveying the development of Massachusetts law, the First Circuit concluded that "the district court [in Speen] . . . did not err when it determined this multifactored approach to be the applicable legal test in Massachusetts." Id. The First Circuit held further that under Massachusetts law this "multifactored test is triggered when employer control does not encompass the person hired 'at every moment, with respect to every detail.'" Id. The First Circuit further found that "[t]his [multifactored] analysis . . . does not ignore but takes into account the level of control present in the employment relationship." Id.; see also Comey, 438 N.E.2d at 815 ("Trial judges should carefully and fully instruct juries on all the factors that may be useful in distinguishing employees from independent contractors.").

Although the instructions thus properly directed the jury to apply a multi-factor test, they incorrectly also directed the jury that these factors focus on the extent of the Defendants' "control over the captain," rather than on the extent of the Defendants' "control or right of control over the captain." Compounding the problem, the court concluded that the jury should determine whether the factors show a level of "control over Mr. Adams," rather than "control or right of control over Mr. Adams."

2

II.     Tax Treatment as a Factor

Adams asserts further error in the court's instruction that the jury may consider Adams' tax treatment in assessing whether he was an employee or an independent contractor. As Defendants point out, a number of courts have instructed the jury that receipt of a 1099 was indicative of the worker being an independent contractor. Defs.' Opp. Pl.'s Mot. New Trial [# 189], at 6. Indeed, even the United States Supreme Court has listed "the tax treatment of the hired party" as a factor in determining whether an individual was an employee under the common law of agency. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-24 (1992).

The relevance of the receipt of a 1099 in categorizing the relationship under common law is not self-evident. In United States v. W.M. Webb, Inc., the Supreme Court explained, however, that under amendments adopted in 1948, an employee was defined for purposes of the Federal Insurance Contributions Act ("FICA") to include "'any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee,' and the language of the [Federal Unemployment Tax Act] FUTA is to the same effect.'" 397 U.S. 179, 182-83 (1970). Accordingly, to the extent that current tax treatment accords with this 1948 definition, the relevance to the Mass. Gen. Laws ch. 151B inquiry of Adams' tax status would be apparent: for in both circumstances, the statutory schemes would be based on "the usual common law rules applicable in determining the employer-employee relationship." Id.

Indeed, the Supreme Court specifically addressed the "usual common law rules" in the maritime context and found that Congress "used the phrase 'usual common law rules' in a generic sense, to mean the standards developed by the courts through years of adjudication, rather than in a technical sense to mean those standards developed by 'common law' courts as

opposed to courts of admiralty," and thus that the "'usual' rules of maritime jurisprudence" should apply as the "'usual common law rules'" in considering whether individuals in the maritime field were employees. Id. at 191. The Court explained that "[c]ontrol is probably the most important factor under maritime law, just as it is under the tests of land-based employment." Id. at 192. The Court observed that "[i]t may be true that, in most maritime relationships, the workers enjoy discretion that is unusually broad if measured by land-based standards—a discretion dictated by the seafaring nature of the activity. However, except where there is nearly total relinquishment of control through a bareboat, or demise, charter, the owner may nevertheless be considered, under maritime law, to have sufficient control to be charged with the duties of an employer" under the tax laws. Id. (finding captains and crews to be employees of owners of commercial fishing boats); see also Cape Shore Fish Co., Inc. v. United States, 330 F.2d 961 (Ct. Cl. 1964) (finding captain and crew of scallop boat to be employees of owners); O'Hara Vessels, Inc. v. Hassett, 60 F. Supp. 672 (D. Mass. 1942) (finding captain and crew of fishing schooners to be employees of owners).

Adams' tax status, however, was not based on these "usual common law rules," but on a very specific statutory requirement added to the tax code after the Supreme Court's decision in W.M. Webb. See Tax Reform Act of 1976, Pub. L. No. 94-455, § 1207(e)(1)(A), 90 Stat. 1520, 1706-07 (1976). By statute, "employment" for purposes of determining wages subject to a W-2 form does not include service:

> performed by an individual on a boat engaged in catching fish or other forms of aquatic animal life under an arrangement with the owner or operator of such boat pursuant to which—(A) such individual does not receive any cash remuneration other than as provided in subparagraph (B) and other than cash remuneration—(i) which does not exceed $100 per trip; (ii) which is contingent on a minimum catch; and (iii) which is paid solely for additional duties (such as mate, engineer, or cook) for which additional cash remuneration is traditional in the industry, (B) such individual receives a share of the boat's . . . catch of fish or other forms of

> aquatic animal life or a share of the proceeds from the sale of such catch, and (C) the amount of such individual's share depends on the amount of the boat's . . . catch of fish or other forms of aquatic animal life, but only if the operating crew of such boat (or each boat from which the individual receives a share in the case of a fishing operation involving more than one boat) is normally made up of fewer than 10 individuals . . . .

26 U.S.C.A. § 3121(b)(20). Thus, the receipt of the 1099 form here was simply by operation of the tax code and not an indication of employment status under the common law. In this circumstance, the court should not have admitted the 1099 form and should not have instructed the jury that it could consider tax treatment as a factor in determining whether Adams was an employee under Mass. Gen. Laws. ch. 151B.

III.   Conclusion

On the record here, where the jury was presented with evidence that Adams was the master of the vessel, directing the crew and overseeing the entire fishing trips, that he received 1099 tax statements, and that he was also subject to immediate termination when in the judgment of the owner he was not efficiently carrying out his duties, the court's erroneous instructions affected Adams's substantial rights as to the threshold issue before the jury of whether Adams was an employee or independent contractor.

Accordingly, Plaintiff's Motion for a New Trial [#180] is ALLOWED.

IT IS SO ORDERED.

December 22, 2015                                         /s/ Indira Talwani
                                                          United States District Judge